UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                        **DECISION AND ORDER**
                                               20-CR-12
JARROD K. ADAMS,

                          Defendant.

_____

      Defendant Jarrod K. Adams is charged in a 2-count Indictment that specifically alleges possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and using or maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.  Dkt. 20.  This case was referred to Magistrate Judge Michael J. Roemer pursuant to 28 U.S.C. § 636(b)(1) for pretrial proceedings.  Dkt. 22.

      Defendant Adams filed pre-trial motions on November 13, 2020.  Dkt. 45.  Amongst the various forms of relief sought was suppression of evidence seized when law enforcement officers executed a federal arrest warrant pertaining to Camille Lopez at 12 Bishop Street, Jamestown, New York on July 16, 2019.  Additionally, Defendant moved to controvert a state search warrant pertaining to 12 Bishop Street, which was obtained later that same day after being authorized by a Jamestown County Court Judge, and to suppress evidence derived from the seizure of his cell phone in accordance with the state search warrant, the contents of which were later searched pursuant to a federal warrant.

Magistrate Judge Roemer held a suppression hearing on February 4, 2021, during which three law enforcement officers testified on behalf of the Government and no witnesses testified on behalf of Defendant. Dkt. 63. Following post-hearing briefing, the Magistrate Judge issued an R&R on August 16, 2021 ("R&R1"). Dkt. 75.

Subsequently, and in the context of a separate case, *United States v. Beardsley, et al.* (W.D.N.Y. 29-cr-49), the Government received video evidence of the July 16, 2019 search of 12 Bishop Street. After the Government provided Defendant Adams with the video clips[1], he moved to re-open the suppression hearing. Dkt. 85.

At a joint status conference held in this case and *United States v. Beardsley,* on December 3, 2021 before the Magistrate, it was determined that a joint, *de novo* evidentiary hearing would be held to address law enforcement's initial entry into 12 Bishop Street and the related discovery of methamphetamine in a bedroom. The parties agreed that testimony from the first Adams hearing would be entered into evidence, and that it could be utilized to cross-examine the witnesses at the joint hearing.

The joint evidentiary hearing was held on January 25, 2022. Dkt. 90. Deputy U.S. Marshal Scott Baryza and New York State Police Senior Investigator Christopher Weber, both of whom had testified at the first Adams hearing, testified at the joint hearing. No witnesses testified on behalf of the three defendants.

After post-hearing briefs and oral argument, the Magistrate Judge issued a R&R on September 23, 2022 ("R&R2") addressing Defendant's motions pertaining to the

---

[1] The video evidence, which Defendant's objections incorrectly refer to as "body cam" footage, consists of approximately 70 clips. The video was apparently taken via a tablet that was equipped with an application set to record when motion activated.

state search warrant for 12 Bishop Street and the federal search warrant for Defendant's cell phone, and to suppress evidence.  Dkt. 103.  Defendant Adams' filed detailed objections on November 11, 2022.  Dkt. 106.  The Government responded to those objections on December 6, 2022, Dkt. 108, and Defendant filed a reply brief on January 6, 2023.  Dkt. 111.  Oral argument on Defendant's objections was held before the Court on January 11, 2023, and the matter was thereafter considered submitted.

Pursuant to 28 U.S.C. § 636(b)(1), the Court applies a *de novo* standard of review.  For the reasons that follow, the Court adopts R&R2 in all respects except for its recommendations and conclusions regarding the search of Defendant Adams' cell phone.

## DISCUSSION

**1. Law Enforcement's Initial Entry Into 12 Bishop Street**

Both of the R&Rs concluded that Austin Gordon, a defendant in the ongoing *Beardsley* case, answered the door of 12 Bishop Street on July 16, 2019 and consented to law enforcement officers' entry into the residence in order to effectuate a federal arrest warrant pertaining to Camille Lopez.  The R&Rs determined that defendant Gordon gave voluntary implied consent to enter when he indicated to the officers that Lopez was upstairs, gestured towards the stairs leading to the second floor, and stepped back into the residence while Deputy Marshal Baryza talked to him in a calm manner with his weapon holstered.

Both R&Rs found in the alternative that it was objectively reasonable for Deputy Marshal Baryza to believe, based on the totality of the circumstances, that defendant Gordon consented to officers entering the residence to execute the warrant for Lopez.

Accordingly, the R&Rs recommend that Defendant Adams' motion to suppress evidence based on unlawful entry into 12 Bishop Street should be denied.

Defendant Adams' objections reassert that defendant Gordon did not consent to law enforcement's entry into 12 Bishop Street. He points primarily to contradictions between Deputy Marshal Baryza's testimony at the first hearing and the subsequently discovered video evidence as proof that Deputy Marshal Baryza's recollection cannot be trusted. In opposition, the Government argues that Defendant's objections are primarily disagreements with the Magistrate Judge's assessment of witnesses and evidence.

Magistrate Judge Roemer's R&R1 found that all three Government witnesses testified credibly, and that the testimony of Deputy Marshal Baryza and Senior Investigator Weber contradicted both the affidavit of Defendant Adams, submitted in support of his motion to suppress, and the affidavit[2] of a licensed professional investigator whom Adams had retained. Dkt. 75. Due to the inconsistencies between the self-serving affidavits and the credible, live hearing testimony of both Government witnesses, who were subjected to cross-examination, the Magistrate declined to credit any of the statements in the affidavits in support of Defendant Adams' motion to suppress.

Magistrate Roemer's R&R2 likewise found that both Deputy Marshal Baryza and Senior Investigator Weber testified credibly at the subsequent, joint hearing. Dkt. 103. While acknowledging that there were some inconsistencies between their testimony at

---

[2] Investigator Olivio's affidavit is based on an interview that he conducted of Austin Gordon, a defendant in the ongoing *Beardsley* case.

the first Adams hearing and their testimony at the joint hearing, the Magistrate found that these minor discrepancies did not pertain to material issues. Furthermore, R&R2 contains a finding that neither witness gave knowing or willfully false testimony during either hearing; rather, their recollections were understandably refreshed after viewing the video evidence. The Magistrate Judge also found, again, that the credible, detailed, and live testimony of the Government witnesses contradicted and outweighed the version of events set forth in the affidavits of Defendant Adams and his private investigator.

The Court must give appropriate deference to the measured determinations of the Magistrate Judge as to the credibility of the hearing witnesses. *See, e.g.*, *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings.").

Upon due consideration of the arguments, the Court adopts the conclusion and the reasoning of the Magistrate Judge as set forth in R&R2. Specifically, the Court finds that Austin Gordon gave voluntary implied consent to the officers for their initial entry into 12 Bishop Street. As such, Defendant's objection is denied.

### 2. Senior Investigator Weber's Discovery of the Ziplock Bag

The Magistrate Judge found that upon entering the residence, Senior Investigator Weber immediately noticed Defendant Adams at the top of the second floor landing and

directed him to come downstairs so that he could speak with him. Senior Investigator Weber also gestured for Defendant Adams to come downstairs. Instead of walking down to meet Senior Investigator Weber, Defendant ran away, which Senior Investigator Weber identified as a threat, so he gave chase. Senior Investigator Weber followed Defendant Adams into an upstairs bedroom and saw him throw a black bag before he was secured in handcuffs and removed from the bedroom. Senior Investigator Weber then returned to the bedroom to finish conducting a protective sweep, during which he shined a light inside the black bag and saw what he suspected was methamphetamine.

The Magistrate concluded that because Camille Lopez's underlying charges involved weapons possession and the law enforcement officers executing the federal warrant for her arrest had been advised that 12 Bishop Street was a "known drug house," Senior Investigator Weber was justified in shining his flashlight on the black bag due to his concern that it might contain a weapon and other individuals might still be at large in the residence.

Lastly with respect to this issue, the Magistrate found the credible hearing testimony reflected that Senior Investigator Weber did not search the black bag, but rather he saw the suspected methamphetamine in plain view[3] while visually inspecting the bag for a weapon with a flashlight. The R&Rs recommend that Defendant Adams'

---

[3] The plain view doctrine requires two conditions be satisfied: (1) the item must be in plain view and its incriminating character must also be "immediately apparent," and (2) not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128 (1990).

motion to suppress evidence based on Weber's observation of the ziplock bag containing what was later confirmed to be methamphetamine should be denied.

In his objections, Defendant Adams argues that Senior Investigator Weber was not in a lawful position when he viewed the ziplock bag containing methamphetamine, and as a result, the conditions of the plain view doctrine are not satisfied. Defendant first relies on *Lange v. California*, 141 S. Ct. 2011 (2021) to argue that fleeing from law enforcement officers does not justify a warrantless search. Defendant also argues that he was under no obligation to come downstairs to speak with Senior Investigator Weber, and therefore his decision to run from Senior Investigator Weber did not pose a danger justifying a protective sweep.

Defendant argues in the alternative that once he was handcuffed and removed from the bedroom, any justification for a protective sweep ended. Finally, he argues that the incriminating character of the black bag's contents was not immediately apparent, and therefore the other condition of the plain view doctrine was not satisfied.

In response, the Government argues that Senior Investigator Weber was the first officer to ascend to the second floor of the residence, so it was possible that the unsecured rooms contained additional individuals. As such, Senior Investigator Weber's reentry into the bedroom after securing Defendant Adams in handcuffs was justified as a protective sweep and continued search for Camille Lopez.

Additionally, the Government reiterates the logic of the R&Rs insofar as both cite to *United States v. Busch*, 2013 U.S. Dist. LEXIS 188419 (W.D.N.Y. July 15, 2013), adopted by *United States v. Anastasio*, 2014 U.S. Dist. LEXIS 104539 (W.D.N.Y. July 29, 2014) for support to expand a protective sweep beyond the bounds of searching

areas where a person could be found. In *Busch*, the court rejected defendant's argument that officers exceeded the scope of a protective sweep when a gun case was opened by officers when it was uncertain whether other individuals were in the building. The court found that opening the gun case was consistent with ensuring the safety of the officers executing the arrest warrant. *Id*. at *147. Citing *United States v. Miller*, 430 F.3d 93, 98 (2d Cir. 2005), the court noted "the Fourth Amendment's reasonableness requirement is sufficiently flexible to allow officers who have an objectively credible fear of danger to take basic precautions to protect themselves." *Busch*, 2013 U.S. Dist. LEXIS 188419 at *144.

First, the Court finds *Lange* to be inapposite since the instant case is not premised on law enforcement's hot pursuit. Rather, it is clear that Senior Investigator Weber was concerned for officer safety and his actions constituted a protective sweep of the residence.

The Court will give appropriate deference to the determinations of the Magistrate Judge regarding the credibility of the hearing witnesses. The Magistrate Judge's recommendation as to this issue is based largely on the hearing testimony of Senior Investigator Weber. Accordingly, the Court finds that both conditions of the plain view doctrine have been met, and it adopts the conclusion and the reasoning of the Magistrate Judge as set forth in R&R2. More precisely, the Court finds that Senior Investigator Weber was in a lawful position when he discovered the ziplock bag containing methamphetamine in plain view. As such, Defendant's objection is denied.

### 3. Senior Investigator Weber's Alleged Continued Search of 12 Bishop Street

Defendant also objects to the fact that the R&Rs do not address the alleged "continued search" of 12 Bishop Street conducted by Senior Investigator Weber. From Defendant's argument, which consists almost exclusively of quotations from the joint hearing, it does not appear to this Court that there is any reason to believe Senior Investigator Weber conducted anything other than a protective sweep prior to the time that the state search warrant, discussed next, was issued. As such, it appears this topic was not addressed in the R&Rs because it was a non-issue.

### 4. State Search Warrant for 12 Bishop Street

Defendant Adams next objects that all evidence, including his cell phone, derived from the search of 12 Bishop Street conducted pursuant to the state search warrant must be suppressed. Defendant appears to rehash his argument that the large quantity of suspected methamphetamine that Senior Investigator Weber discovered in his bedroom was illegally encountered. From there, he argues that law enforcement's reference to the methamphetamine in the search warrant application submitted to a Jamestown County Court Judge was improper. Accordingly, Defendant argues, the state search warrant that was issued was not supported by probable cause.

The Government's response notes that the Magistrate Judge carefully analyzed the probable cause set forth in the affidavit submitted with the search warrant application. With respect to this issue, R&R2 relies on and incorporates the detailed analysis and findings of R&R1.

The search warrant affidavit of Detective Jeremy Maggio, Jamestown Police Department, states that suspected methamphetamine (which by the time the search

warrant application was made had field tested positive for the presence of methamphetamine) and multiple firearms were observed inside of 12 Bishop Street as law enforcement conducted their search for Camille Lopez and the attendant protective sweep. The affidavit also included information supplied by confidential informants regarding suspected narcotics trafficking at 12 Bishop Street.

As discussed above, the Court finds that Senior Investigator Weber was in a lawful position when he observed the suspected methamphetamine in plain view. As such, inclusion of this information was not improper and probable cause was readily established. Accordingly, the Court adopts the conclusion and the reasoning of the Magistrate Judge as set forth in R&R2 with respect to this issue, and Defendant's objection is denied. Additionally, Defendant's request for a *Franks* hearing concerning this affidavit is denied.

### 5. Federal Search Warrant for Defendant's Cell Phone

Defendant contends that the November 1, 2019 federal search warrant to examine the contents of his cell phone (which was seized pursuant to the state warrant on July 16, 2019) was obtained in reliance on the warrantless search that law enforcement allegedly conducted of 12 Bishop Street. As such, he requests suppression of all evidence subsequently gleaned from the cell phone as fruit of the poisonous tree.

Fundamentally, this objection is also premised on the federal search warrant application's reference to the methamphetamine discovered in Defendant's bedroom during Senior Investigator Weber's protective sweep. The federal search warrant affidavit of Special Agent David Lauer, Drug Enforcement Administration ("DEA"), states

that suspected methamphetamine and multiple firearms (later determined to actually be BB guns) were observed inside of 12 Bishop Street as law enforcement conducted their search for Camille Lopez and the attendant protective sweep.

Special Agent Lauer's affidavit also included information supplied by confidential informants regarding narcotics trafficking.  Additionally, it noted that the cell phone was located in Defendant Adams' bedroom in proximity to what was later determined to be 222.5 net grams of pure methamphetamine hydrochloride, commonly known as "crystal meth," as well as a large amount of U.S. currency.  His affidavit noted that drug paraphernalia, including digital scales and narcotics packing materials, was discovered in the residence.  Finally, the affidavit also detailed how cell phones are commonly utilized by drug traffickers and described the information that he anticipated would be discovered on the phone and how it would be pertinent to the investigation.

Because the Court has found that Senior Investigator Weber was in a lawful position when he observed the methamphetamine in plain view, inclusion of this information in the search warrant application was not improper and probable cause was clearly established.  Accordingly, the Court adopts the conclusion and the reasoning of the Magistrate Judge as set forth in R&R2, which relies on and incorporates the detailed analysis and findings of R&R1, with respect to this issue, and denies Defendant's objection.

**6. Delay in Obtaining the Federal Search Warrant for Defendant's Cell Phone**

Defendant Adams argues that the Magistrate Judge incorrectly assessed the four factors set forth in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), and thereby incorrectly determined that law enforcement's delay in applying for a search warrant

concerning Defendant's cell phone was not violative of the Fourth Amendment.  The Government's response urges the Court to adopt the Magistrate Judge's conclusions.

*Smith* lays out four factors that are relevant in deciding "whether the police have waited an unreasonable amount of time before seeking a search warrant: (1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized item[s], and (4) the strength of the state's justification for the delay."  *Smith*, 967 F.3d at 206 (internal quotation marks and citation omitted).  The Second Circuit in *Smith* concluded that, as to the first factor, a month-long delay is presumptively unreasonable and therefore the 31-day period of delay in *Smith* weighed "substantially" in favor of the defendant.  *Id.* at 206-207.

It is undisputed that there was a 108-day delay between the seizure of Defendant Adams' cell phone on July 16, 2019 and law enforcement's submission of a search warrant application for that device on November 1, 2019, which was granted that same day by Magistrate Judge Roemer.

R&R2 relies on and incorporates the detailed analysis and findings of R&R1 with respect to this issue.  In R&R1, Magistrate Judge Roemer comprehensively analyzed the *Smith* factors, finding that the delay in this case was "presumptively unreasonable" and weighed in favor of Defendant Adams.  However, the Magistrate Judge determined that the second and third factors weighed "strongly in favor" of the Government, and the fourth factor was "either neutral or weigh[ed] slightly in favor" of Defendant."  On balance, the Magistrate Judge found that no unconstitutional delay had occurred.

In the alternative, the Magistrate Judge reasoned that even if an unconstitutional delay had occurred, the application of the exclusionary rule would not be appropriate

because there would be no "appreciable deterrent value" gained by suppressing the evidence from the phone under the facts of the case.

The Court concurs with the Magistrate Judge's analysis of the second and third *Smith* factors but diverges in its analysis of the first and fourth factors.

As to the first factor, the delay in excess of three months is quite concerning to this Court. While the Magistrate Judge held that this factor weighed in favor of Defendant, the Court concludes that this factor should weigh *heavily* in his favor.

Regarding the fourth factor, the strength of the Government's explanation for the delay, the Court finds that instead of being "either neutral or weigh[ing] slightly in favor" of Defendant Adams, as found by the Magistrate Judge, this factor also weighs significantly in favor of Defendant.

Special Agent Lauer was contacted by the Jamestown Police Department on July 16, 2019 regarding this case. He assisted with drafting the search warrant application that was submitted to the Jamestown County Court Judge, and later that day he assisted in the execution of the state search warrant for 12 Bishop Street. Because the case was being pursued by local law enforcement, the Jamestown Police Department initially took possession of Adams' seized cell phone.

When the case was subsequently adopted by the DEA and prosecuted at the federal level, the Jamestown Police Department was asked to transport all of the evidence seized from 12 Bishop Street to the DEA office in Buffalo, New York. Although the rest of the evidence was brought to the DEA office on July 31, 2019, Defendant's cell phone was left in the custody of the Jamestown Police Department.

On October 29, 2019, Special Agent Lauer personally traveled to Jamestown to retrieve the phone and on November 1, 2019 he applied for a federal search warrant.

In *Smith*, the officer who applied for the search warrant "engaged in very little investigation" of the defendant between the date the defendant was arrested and when the officer applied for a search warrant. *Smith*, 967 F.3d at 210. The Second Circuit in *Smith* also reasoned that neither an officer's heavy case load nor responsibility for "a large geographic district," without more, "entitle the officer to wait without limit before applying for a warrant to search an item that the officer has seized . . . unless there are important reasons why other matters must take a priority." *Id.*

The Court does not agree with the Magistrate Judge's finding that Special Agent Lauer exercised an appreciable degree of diligence in pursuing this matter. Moreover, it is noted that although *Smith* was issued after Defendant's cell phone was seized, it was only issued 12 days later.

The Court's determination that the first factor weighs heavily in favor of Defendant Adams and the fourth factor also weighs in favor of Defendant tips the scales to a conclusion that the 108-day delay amounts to a constitutional violation.

As to whether application of the exclusionary rule is justified here, "the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211. This is contrasted with the situation where constitutional violations "are the product of isolated simple negligence," because excluding evidence in those cases would not sufficiently deter police misconduct. *Id.* at 211-212.

The Magistrate Judge reasoned that, should the Court find a Fourth Amendment violation stemming from the delay, the exclusionary rule should not apply because the record was devoid of evidence that (1) law enforcement's delay was deliberate, reckless, or grossly negligent; (2) there was systemic or recurring negligence; or (3) the delay afforded officers any advantage in this case.

The Court finds, however, that the relevant conduct here equates to recklessness or gross negligence. As explained by the District of Connecticut in ruling that evidence from the unconstitutional search of a cell phone would be suppressed under the circumstances of a 34-day delay, where the defendant's cell phone was seized a month after the *Smith* decision came out, "the Second Circuit explicitly put law enforcement on notice that month-long, unjustified delays will no longer be tolerated." *Tisdol*, 544 F. Supp. 3d at 227-228, quoting *Smith*, 967 F.3d at 213. The *Tisdol* court further explained, "[i]n articulating that its principles should be used to guide the application of the exclusionary rule, *Smith* essentially directed that unreasonably delayed search results caused by police department administrative foibles are unacceptable." *Id.* at 228.

Accordingly, the Court rejects the conclusion and the reasoning of the Magistrate Judge as set forth in R&R2, which relies on and incorporates the detailed analysis and findings of R&R1, with respect to this issue. Defendant's motion to suppress evidence gleaned pursuant to the search of the contents of his cell phone is granted.

## **CONCLUSION**

Accordingly, upon due consideration of the arguments and upon *de novo* review, the Court ADOPTS the conclusions and the reasoning of the Magistrate Judge as set

forth in R&R1 and R&R2 (Dkts. 75 and 103) in all respects, except for the analysis and conclusions surrounding law enforcement's delay in obtaining a search warrant for the contents of Defendant Adams' cell phone.

More specifically, Defendant Adams' motions to suppress and to controvert search warrants (Dkt. 45) are therefore DENIED in relevant part, consistent with the foregoing.  Defendant Adams' motion to suppress evidence discovered pursuant to the search of the contents of his cell phone is GRANTED.

The parties shall appear for a status conference to set a date for trial or plea on February 15, 2023 at 12:30 pm.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  February 13, 2023